Filed 7/18/22 P. v. Madera CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060044 |
| v. | (Super. Ct. No. 06WF3312) |
| HERUVEY RUDY MADERA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Cynthia M. Herrera, Judge. Affirmed.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Melissa Mandel, Assistant Attorney General, Robin Urbanski and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

This is an appeal from an order resentencing defendant pursuant to Penal Code section 1170.03, which permits the court to recall a defendant's sentence upon the recommendation of the Secretary of the California Department of Corrections and Rehabilitation (CDCR).[1] Defendant was initially sentenced on ten counts, including carjacking, for which he received a sentence of 15 years to life (the primary term), as well as intimidating a witness, for which he received a sentence of seven years to life, both of which were life terms as a result of a gang enhancement. On the remaining counts and enhancements, he received determinate sentences, and all sentences were run concurrent with the 15 years to life. We affirmed the judgment with some minor modifications in 2010. (See *People v. Madera*, G041943, May 14, 2010 [nonpub. opn.] (*Madera I*).)

In 2016, the Secretary of the CDCR wrote to inform the court that it did not have statutory authority to run the gang and firearm enhancements concurrently, but was instead required to run them consecutively. In response, the court issued a minute order without holding a hearing, and without stating any reasons, in which it struck most of the enhancements, including the enhancements attached to the carjacking and witness intimidation counts.

In 2018, the Secretary of the CDCR again wrote to the court, informing it that the life sentence for witness intimidation was no longer a lawful sentence as a result of *People v. Lopez* (2012) 208 Cal.App.4th 1049, 1064-1065. The original sentencing judge was unavailable, so a new judge was assigned the case and appointed counsel for defendant. Defendant filed a motion to recall his sentence. In the motion, defendant pointed out an additional flaw in the sentence: having struck the enhancements, the carjacking count was also no longer eligible for a life sentence.

The court resolved this issue by holding that the prior judge's order striking the enhancements was invalid because the court had not stated its reasons in the minute

---

[1]     All statutory references are to the Penal Code unless otherwise designated.

2

order, which is a mandatory requirement of section 1385. Having reinstated the enhancements, the court resentenced defendant to 15 years to life on the carjacking count. On the witness intimidation count, the court resentenced defendant to a determinate two years in prison. All counts were run concurrently to the carjacking sentence, resulting in an identical total sentence. Defendant appealed.

Defendant raises two issues on appeal. First, he contends the court erred by invalidating the 2016 order, which had the effect of reinstating the enhancements. Second, he contends that, even if he was eligible for a life sentence, the court abused its discretion in selecting a life sentence.

We find no error and affirm. We agree with the court's conclusion that the 2016 order was invalid and of no effect due to the failure to state reasons for striking the enhancements. We further conclude that, while defendant has made impressive progress while in prison, the court's selection of a life sentence was within its discretion.

FACTS

The following facts are drawn from our prior opinion in this matter (*Madera I*) and our prior opinion in a codefendant's appeal. (*People v. Ramirez*, G041265, June 4, 2010 [non pub. opn.].)

*The First Incident* (*Ramirez*)

At 11:00 p.m., on December 9, 2006, 18-year-old Christopher Vossler, Ryan Miller, and two other friends were walking to their van to go home after attending a party in Garden Grove when a car containing defendant and two accomplices drove by the group and made a U-turn. Defendant, who was carrying a gun, got out of the car and started walking toward Vossler.

Defendant yelled, "nobody move." He walked up to Vossler and held the gun to Vossler's forehead; Vossler could feel the gun touching his head. Defendant

3

asked Vossler "where you from?" Vossler understood defendant to be asking whether he was a gang member and told defendant he was not. Defendant continued to ask Vossler where he was from and Vossler kept responding that he was not a gang member. Defendant told Vossler to empty all the things out of his pockets and put them on the ground. Vossler complied, placing his wallet and cell phone on the ground.

Miller emptied his pockets and dropped his cell phone, his keys, and $6 in his wallet to the ground. Defendant walked over to Miller, held the gun to his head and asked him if he banged and what city he was from. Miller said he did not bang and that he was from Garden Grove. Defendant told Miller to take everything out of his pockets; Miller told him that everything was already on the ground.

After Vossler emptied his pockets, defendant again asked where he was from and if he bangs. Defendant then pointed the gun in the air and pulled the trigger three times and said "the next one is a bullet" and "give me all your stuff or I'm going to put it in your head."

Meanwhile, one of the accomplices tagged the nearby walls with black spray paint; he then walked up to Vossler and spray painted his shirt. Defendant said to Vossler something to the effect that if he called the police he would "fucking kill [him]."

*The Second Incident* (*Madera I*)

During the night of December 24, 2006, Adam Van Dersande drove a Chrysler PT Cruiser automobile to a gas station to buy ice cream and cigarettes. As Van Dersande walked back to his car after making his purchases, defendant and an accomplice approached him and asked for a ride to their car, which they said had broken down on the 91 Freeway. Van Dersande agreed. Defendant sat in the front passenger seat and his accomplice sat in the backseat on the driver's side.

While Van Dersande drove toward the 91 Freeway, defendant asked to use his cell phone to call a tow truck. Van Dersande handed his cell phone to defendant, who

4

made a call. As they approached the 91 Freeway, the accomplice reached his arm around Van Dersande's neck and placed Van Dersande in a chokehold. Van Dersande felt a knife pressing against his neck. Defendant told him to pull into a parking lot at a McDonald's restaurant.

Van Dersande drove into the parking lot and stopped. Defendant reached over, took the keys out of the ignition, and told Van Dersande to take everything out of his pockets. The accomplice continued to hold Van Dersande in chokehold and press a knife against his neck. Van Dersande took out his lighter, cigarettes and a wallet. After taking these items, defendant got out of the car and walked around the car to the driver's side. As the accomplice released Van Dersande from the chokehold, defendant pulled him out of the car. Defendant told Van Dersande, "'[g]et out of here. We're going to kill you.'"

Van Dersande ran to a truck parked nearby and told the driver he had been carjacked. Van Dersande borrowed a cell phone and called the police.

On December 28, 2006, Garden Grove Police Officer Douglas Pluard saw a car matching the description of the stolen PT Cruiser. After confirming it was Van Dersande's car, Officer Pluard activated his patrol car lights and siren and followed the stolen car. The car stopped, and three men jumped out of it and ran toward a condominium complex. The driver was wearing a dark-colored jacket. Officer Pluard called for backup and pursued the men. Police officers found defendant in a backyard shed, along with a dark-colored jacket matching the description of the one worn by the driver. A gas card belonging to Van Dersande fell out of the jacket pocket.

Defendant was a member of "Too Fucking Sick" (2FS), a criminal street gang, and had the gang moniker "Casper." Garden Grove Police Detective Peter Vi testified that in his opinion defendant committed the charged crimes for the benefit of a criminal street gang.

5

## STATEMENT OF THE CASE

In 2008, the jury found defendant guilty of the following crimes committed in connection with the first incident: two counts of robbery (counts 5 & 6, § 211); dissuading a witness (count 7, § 136.1(b)(1)); gang-related graffiti (count 8, § 186.22(d)), participating in a criminal street gang (count 9, § 186.22(a)); and unlawful possession of a firearm by a felon (count 10, § 12021(a)(1)). As to counts 5, 6 and 7, the jury also found Madera used a firearm in the commission of the offenses (§ 12022.53(b)).

The jury found defendant guilty of the following crimes committed in connection with the second incident: carjacking (count 1, § 215(a)); unlawfully driving or taking a motor vehicle (count 2, Veh.Code, § 10851(a)); robbery (count 3, § 211); and participating in a criminal street gang (count 4, § 186.22(a)).

Finally, the jury found it be to be true that defendant had suffered a prior prison term within the previous five years. (Former § 667.5, subd. (b).)

In 2009, the court sentenced defendant as follows:

Count 1 (carjacking): 15-years to life;

Count 2 (stealing a motor vehicle): 2 years, concurrent to count 1;

Count 3 (robbery): 3 years, concurrent to count 1;

Count 4 (gang participation): 2 years, concurrent to count 1;

Count 5 (robbery): 3 years, concurrent to count 1;

Count 6 (robbery): 3 years, concurrent to count 1;

Count 7 (dissuading a witness): 7-years to life, concurrent to count 1;

Count 8 (graffiti): 2 years, concurrent to count 1;

Count 9 (gang participation): 2 years, concurrent to count 1;

Count 10 (unlawful possession of a firearm): sentence stayed.

The court found true a 10-year gang enhancement (§ 186.22, subd. (b)) as to counts 1, 2, 3, 5, 6 and 7. The court imposed each of the enhancements to run concurrently to count 1. The court found true a 10-year firearm enhancement as to counts

6

5, 6 and 7, which the court imposed concurrently to count 1. The total prison sentence was 15 years to life. In 2010, on direct appeal from the judgment, we affirmed with minor modifications to the sentence. (See *Madera I.*)

In May 2016, the California Department of Corrections and Rehabilitation (CDCR) sent a letter to the trial court stating that the concurrent sentences imposed for the firearm and gang enhancements were improper as they were required by statute to be imposed consecutively.

In response to that letter, on May 31, 2016, the trial court issued a minute order striking all firearm enhancements and the gang enhancements as to counts 1, 2, 3 and 5 pursuant to section 1385 (for reasons that are unclear to us, the court did not strike the gang enhancement as to count 6 despite the CDCR letter mentioning that count; so it may have been inadvertence). There were no appearances by the parties. The minute order did not state any reasons for dismissing the enhancements. In a subsequent abstract of judgment, defendant's sentence remained 15 years to life.

In November 2018, the Office of the Secretary for the CDCR sent a second letter to the superior court stating that pursuant to *People v. Lopez* (2012) 208 Cal.App.4th 1049, 1064-1065, the life sentence imposed as to count 7 (dissuading a witness) was improper because there was no express finding by the jury that defendant had made threats in connection with dissuading a witness. The Secretary recommended that appellant be resentenced in accordance with the holding in *Lopez* pursuant to section 1170, subdivision (d) (which has since been reenacted as section 1170.03).

By this time, the sentencing judge had been appointed to the Court of Appeal. A newly assigned judge appointed counsel for defendant. Counsel filed a motion to recall defendant's sentence and to resentence him pursuant to section 1170, subdivision (d).

Defense counsel pointed out what was likely an unintended consequence of the court's 2016 order striking the gang enhancements. Count 1 (carjacking), which was

7

the only other life term, was only a life term *because of* the gang enhancement. Absent a gang enhancement, the maximum term for carjacking was a determinate nine years. Defense counsel ran the numbers and asserted that, assuming all of defendant's convictions were run consecutively, his maximum sentence would be a determinate 15 years and 4 months.[2] In defendant's view, when the court struck the sentencing enhancement as to the carjacking count, it eliminated the possibility of a life sentence.

In addition to pointing out the sentencing errors, defendant's motion sought resentencing in the interest of justice. Defendant argued he was 20 years old when he committed the crimes and had spent 14 years in prison. While in prison he had received his GED, gotten married, dropped out of his gang (resulting in injuries that required hospitalization), had his gang tattoos removed, and was excelling in work assignments in prison. Defendant noted that he had a difficult childhood with no father figure. He idolized an older brother, himself a gang member, who was murdered in front of their home in a gang shooting. Since going to prison, defendant argued he had matured considerably, offering numerous examples. He also had a job waiting for him as an electrician if he were to get out of prison. The motion attached character letters from his wife, sisters, niece, and friends. Also attached were numerous certificates demonstrating classes and programs defendant had completed while in prison.

In response, the People conceded that defendant could not be sentenced to seven years to life on count 7 (intimidating a witness), but they took the position, as they do on appeal, that the prior judge's order striking the gang enhancements was invalid pursuant to section 1385 because the court did not provide a statement of reasons. In December 2020, the court agreed with the People's position and ruled that defendant was still eligible for a term of 15 years to life in prison. At a subsequent hearing, the court declined to exercise its discretion to impose a determinate term and instead sentenced

---

[2] Defense counsel later conceded the proper calculation was approximately 21 years.

defendant to 15 years to life.  On the remaining counts, the court issued determinate sentences to run concurrently, including on the witness intimidation count.  Defendant appealed.

DISCUSSION

This appeal presents two issues.  The first is whether the court erred in determining that the 2016 order striking certain enhancements was an invalid order with no legal effect.  The relevance of this issue is that, absent a gang enhancement, the crime of carjacking does not carry a life term.  (See § 215 [carjacking carries a penalty of three, five, or nine years in prison]; 186.22, subd. (b)(4)(B) [sentencing enhancement permitting 15-years to life when carjacking performed for the benefit of a street gang].)

The second issue is, assuming defendant's sentence of 15 years to life was correct, did the court abuse its discretion in declining to reduce defendant's overall sentence in light of his personal progress over the past 14 years in prison.

1. The 2016 Minute Order Striking Enhancements was Invalid

The 2016 order striking certain gang enhancements and all gun enhancements was purportedly based on section 1385 and was described by the court as a nunc pro tunc order.

At the outset, this order was not authorized as a nunc pro tunc order.  "'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts.  [Citations.]  The power exists independently of statute and may be exercised in criminal as well as in civil cases.'" (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  However, "'The general rule is that an amendment of the record of a judgment, and a nunc pro tunc entry of it, may not be made to correct a judicial error involving the merits. . . .  [¶]  The power of the court in this regard is to make the journal entry speak the truth by correcting clerical errors and

9

omissions, and it does not extend beyond such function. Although grounds may exist for opening, modifying, or vacating the judgment itself, in the absence of such grounds, the court may not, under the guise of an amendment of its records, revise or change the judgment in substance and have such amended judgment entered nunc pro tunc. . . .'" (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890-891.) Under this rule, the 2016 order plainly was not a nunc pro tunc order. At the time of sentencing, the court intended to impose a concurrent sentence on the enhancements. It was not a clerical error. As a result, any change to that sentence could not be done on a nunc pro tunc basis.

Nevertheless, the question remains whether the order was valid on another basis. The court cited section 1385, which provides, "(a) The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record. The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter. A dismissal shall not be made for any cause that would be ground of demurrer to the accusatory pleading. [¶] (b)(1) If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a)."

"Stating the reasons for dismissal is mandatory, and an order dismissing charges is generally not valid unless it complies with this requirement." (*People v. Johnson* (2015) 61 Cal.4th 734, 769.) The same rule applies to striking enhancements: "In order to strike an enhancement 'in the furtherance of justice' [citation], a trial court must set forth, on the record, its reasons for doing so." (*In re Renfrow* (2008) 164 Cal.App.4th 1251, 1255 [citing former section 1385, subd. (c)(1); now subd. (b)(1)].) The "[r]equirement of a statement of reasons for dismissal pursuant to section 1385 is

10

mandatory, not directory [citation], and in the absence of such statement 'the order may not be considered a dismissal under section 1385.'" (*People v. Hunt* (1977) 19 Cal.3d 888, 897, fn. omitted.) "The purpose of the section 1385 statement requirement is (i) to promote judicial accountability to protect the public interest in not allowing improper or corrupt dismissals [citation] and (ii) to facilitate appellate review [citation]." (*People v. Williams* (2021) 65 Cal.App.5th 828, 835 (*Williams*).)

Here, the court failed to state any reasons for striking the enhancements pursuant to section 1385. Consequently, the order was "ineffective." (*Williams, supra,* 65 Cal.App.5th at p. 835.) As a result, none of the dismissals of the sentencing enhancements took effect, and the court correctly concluded that defendant remained eligible for a sentence of 15 years to life for carjacking.

2. The Court Acted Within its Discretion in Sentencing Defendant to 15 Years to Life

The next question is whether the court acted within its discretion in imposing such a sentence. The court's authority for resentencing defendant is found in section 1170.03.[3] That section provides, "When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the Department of Corrections and Rehabilitation . . . , the court may, . . . at any time upon the recommendation of the secretary . . . , recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence." (§ 1170.03, subd. (a)(1).) In recalling the defendant, the court has the discretion to "[r]educe a defendant's term of

---

[3] Section 1170.03 was enacted after the court's ruling in this case. The provisions of that section were previously included in section 1170, subdivision (d), with some changes.

11

imprisonment by modifying the sentence," or to vacate the conviction and instead impose sentence on a lesser included offense. (§ 1170.03, subd. (a)(3)(A).)

The statute provides that the court may consider the defendant's current circumstances in determining the sentence: "In recalling and resentencing pursuant to this provision, the court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice. The court shall consider if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, if the defendant was a victim of intimate partner violence or human trafficking prior to or at the time of the commission of the offense, or if the defendant is a youth or was a youth as defined under subdivision (b) of Section 1016.7 [i.e. under 26 years of age] at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense." (§ 1170.03, subd. (a)(4).)

Finally, any request for resentencing initiated by the Secretary of the Department of Corrections and Rehabilitation creates a presumption in favor of recalling and resentencing defendant, "which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1170.03, subd. (b)(2).) "The legislative history of these changes indicates that the bill was, in part, intended to clarify the Legislature's intent regarding former section 1170(d)(1), which it had amended in 2018. Specifically, the Legislature sought through Assembly Bill 1540 to 'ensure due process and equitable application in these types of resentencing cases' and indicate that trial courts should accept the CDCR's

12

resentencing recommendations." (*People v. McMurray* (2022) 76 Cal.App.5th 1035 (*McMurray*).)

Defendant contends we should interpret this as a presumption in favor of a *shorter* sentence. We disagree. The presumption, as *McMurray* explained, is in favor of "accept[ing] the CDCR's resentencing recommendations." (*McMurray, supra*, 76 Cal.App.5th 1035.) Here, the court did just that by reducing defendant's punishment on the witness intimidation count from seven years to life to a determinate two year sentence, run concurrently with the sentence on count 1 (carjacking). This was the only issue raised by the Secretary in the 2018 letter. The fact that this did not affect the overall length of the sentence is immaterial. The court's actions were entirely consistent with a presumption in favor of recalling and resentencing defendant.

Nevertheless, defendant contends that—with or without a presumption—the court simply abused its discretion by not reducing defendant's sentence in light of the progress he has made while incarcerated. (See *People v. Panozo* (2021) 59 Cal.App.5th 825, 837 ["We review a trial court's sentencing decisions for an abuse of discretion, evaluating whether the court exercised its discretion 'in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest."'"].) Defendant notes that he has made substantial progress while in prison. For example, he cut ties with the gang he was in (resulting in hospitalization from injuries he sustained in doing so), obtained his GED, completed numerous community college courses, and has a job lined up outside of prison. Moreover, defendant argues, he experienced a traumatic childhood and was still considered a youth (age 20) at the time of the crime. (See § 1016.7, subd. (b).)

The court erred, in defendant's view, by placing too much emphasis on the nature of the crimes and the views of the prior judge who oversaw the trial. Defendant argues that the court's "primary considerations should have been the determination of the

risk of future violence and whether continued incarceration is 'in the interest of justice.'" To that end, defendant cites numerous cases in the context of parole stating that the nature of the crime diminishes in importance overtime when considering the risk of releasing a defendant back into society. (See e.g. *In re Scott* (2005) 133 Cal.App.4th 573, 595 (*Scott*) ["the predictive value of the commitment offense may be very questionable after a long period of time"].)

That is not how we view the relevant inquiry. The primary inquiry in a section 1170.03 resentencing is still to determine the appropriate level of punishment for the crime. The court's duty is to sentence defendant in the first instance. (§ 1170.03, subd. (a)(1).) Under section 1170.03, subdivision (a)(4), the court may consider the defendant's conduct while in prison. But that conduct is simply a mitigating factor to consider, no different than a trial judge considering mitigating factors at an initial sentencing hearing.

This was not a parole hearing. In a parole hearing, the defendant "shall grant parole to an inmate unless it determines . . . that consideration of the public safety requires a more lengthy period of incarceration . . . ." (§ 3041, subd. (b)(1).) The purpose of sentencing, by contrast, is "public safety achieved through punishment, rehabilitation, and restorative justice. When a sentence includes incarceration, this purpose is best served by terms that are proportionate to the seriousness of the offense . . . ." (§ 1170, subd. (a)(1).) So while it is true that the nature of the crime takes on less importance over time at a parole hearing, the same cannot be true at the time of sentencing.

With this understanding of the relevant inquiry, we simply cannot find an abuse of discretion. We recognize that defendant has made substantial progress while in prison, and we applaud him for that. But an appeal is not an opportunity for a sentencing do-over. We may overturn the court's decision only if the judge abused their discretion;

14

in other words, did something so inconsistent with the spirit or letter of the law that they were not legally entitled to do. That is not the case here.

The court's emphasis on the nature of the crimes was appropriate given that this sentencing is done "as if they had not previously been sentenced" (§ 1170.03, subd. (a)(1)) and in light of the legislative mandate to select "terms that are proportionate to the seriousness of the offense . . . ." (§ 1170, subd. (a)(1).)

Moreover, the court's reliance on the prior judge's comments about the case was appropriate under the circumstances. The court emphasized the fact that the prior judge had carefully considered the sentence previously imposed, which, though a life sentence, was significantly more lenient than defendant's potential maximum sentence. The current judge did not oversee the trial and thus stood to benefit from the prior judge's observations about the case. While it would be inappropriate to *entirely* defer to the prior judge, we see nothing in the record to suggest that was done here. To the contrary, the court described the task of predicting the prior judge's decision under the current circumstances as "pure speculation." The current judge emphasized that she had reviewed everything available to her "to make the best decision that I think is appropriate." She stated her decision was "consistent with what I think was the intention of the first Court, but obviously I know I have had the discretion and used my discretion to resentence him."

Finally, while defendant contends the court gave "short shrift" to defendant's progress while in prison and the other mitigating factors he presented, he concedes that the court did acknowledge that evidence. The court stated, "And I see that [defendant] is taking advantage of the time. It looks like you, sir, have, in fact, done good things. And I'm happy for you because that is important to your family." "I see everything you've done, I think you've done well, and I hope for yourself you continue to do that and actually for purposes of parole that those are things that will be looked at." Thus we are not presented with a situation where the court ignored relevant factors. The

15

court simply was not of the view that those mitigating factors warranted a lower sentence, and those are the types of judgment calls that are left to the trial courts, not the Court of Appeal.

## DISPOSITION

The judgment is affirmed.[4]



MARKS, J.*

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[4]     Madera was 20 years old at the time of these offenses. We are affirming without prejudice to his filing a postjudgment motion for a *Franklin* proceeding to preserve evidence of youth-related factors for future parole hearings. (See Pen. Code, § 1203.01*; People v. Franklin* (2016) 63 Cal.4th 261, 286-287; *People v. Madrano* (2019) 40 Cal.App.5th 961, 968-969.)